UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TUFTS UNIVERSITY SCHOOL OF MEDICINE,<br><br>           Plaintiff,<br><br>v.<br><br>EVIDENCE IN MOTION, LLC,<br><br>           Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Trustees of Tufts College ("Tufts") bring this Complaint on behalf of Tufts University School of Medicine ("TUSM") seeking a declaration pursuant to 28 U.S.C. § 2201 that Tufts is entitled, directly or through TUSM, to proceed with the establishment of a Doctor of Physical Therapy ("DPT") program based in Phoenix, Arizona (the "Phoenix DPT Program") without interference from Evidence in Motion, LLC ("EIM"), a for-profit Kentucky limited liability corporation headquartered in Texas.

## OVERVIEW

1. TUSM, established in 1893, is one of several schools that constitute Tufts University, a non-profit academic institution in Massachusetts. TUSM is located in downtown Boston, Massachusetts and is affiliated with several hospitals in Massachusetts and one in Maine.

2. Tufts first became acquainted with EIM in the context of discussing a potential local DPT program. Those discussions expanded to include a possible agreement to work together to develop DPT Programs in other geographic locations, including Arizona. The discussions occurred over a period of time, and EIM provided TUSM with proposed drafts of an agreement (the "Draft Expansion Agreement"). However, the parties never agreed upon the terms of a Draft Expansion Agreement, and never finalized or signed a Draft Expansion Agreement.

3. For a variety of reasons, relating to such factors as regional demographics and accessibility to potential students, Tufts moved forward on its own with regard to the Phoenix DPT Program, committed significant time and resources, and expects to continue committing and expending even greater time and resources toward the development of the Phoenix DPT Program.

4. EIM has attempted to frustrate TUSM's efforts by (a) contending that the establishment of a two-year hybrid DPT program in Phoenix would impinge on EIM's purported intellectual property ("IP"), (b) contending that TUSM's Phoenix DPT Program would inevitably involve the use of other EIM IP even though TUSM has developed its own content for the Phoenix program, and (c) implying that EIM introduced the corporate opportunity to TUSM and that TUSM is misappropriating it.

5. TUSM is in the process of negotiating contracts with Arizona clinical sites, as well as contracts with vendors and faculty members, involving significant costs and obligations. In addition, TUSM must proceed with developmental and logistical steps necessary to move forward with the Phoenix DPT Program in order to meet the planned August 2022 launch.

6. TUSM, as part of a non-profit academic institution, owes a fiduciary duty to its donors to steward their dollars in a prudent manner in furtherance of its mission, and a duty to its

prospective students to provide a robust program that is not impaired or inappropriately modified by unfounded claims of infringement on another party's alleged IP rights.

7. EIM's unfounded contentions that TUSM is infringing on EIM's IP rights, and its implication that TUSM is misappropriating an EIM corporate opportunity, are impinging upon TUSM's efforts with regard to moving forward with its planned two-year hybrid DPT Program in Arizona and interfering with TUSM's corporate opportunity to further its educational mission. Accordingly, TUSM comes to this Court seeking a declaratory judgment that (a) EIM has no IP rights in the concept of a two-year hybrid DPT Program, (b) TUSM cannot be held to have infringed upon IP rights in EIM materials because it has developed its own content; (c) TUSM's decision to establish the Phoenix DPT Program does not constitute a misappropriation of an EIM corporate opportunity; and (d) Tufts is entitled, directly or through TUSM, to proceed with the establishment of the Phoenix DPT Program without interference from EIM.

**PARTIES**

8. TUSM is one of ten schools comprising Tufts University, a Massachusetts non-profit private research university serving approximately 5800 undergraduates and 5800 graduate students each year. TUSM, which is based in Boston, is consistently ranked among the world's best medical research institutions for clinical medicine.

9. EIM is a Kentucky limited liability for-profit corporation headquartered in San Antonio, Texas. EIM is an affiliate and subsidiary of Confluent Health LLC ("Confluent"), a holding company formed in 2014 by several affiliates principally involved in providing physical therapy at brick and mortar locations scattered across the United States. EIM holds itself out as being in the business of facilitating the efforts of academic institutions to establish Doctor of Physical Therapy programs.

## **JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant. The parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendant EIM with respect to this Action because, among other things:

   a. This action arises out of EIM's solicitation of TUSM in Massachusetts to enter into the Draft Expansion Agreement, which would have created a relationship between the parties with respect to the Phoenix DPT Program and potentially other DPT Programs, if the parties had decided to move forward with that arrangement. Although the parties never reached agreement, EIM, through its allegations of infringement on IP rights, and its implication that TUSM is misappropriating an EIM corporate opportunity, is attempting in effect to enforce the unconsummated agreement it discussed with TUSM in Massachusetts, and to prohibit TUSM from proceeding without partnering with EIM.

   b. EIM's main representative during a number of key discussions regarding the proposed partnership was EIM's Chief Executive Officer, John Childs ("Childs"). During this time, Childs was also employed by TUSM as the Program Director of TUSM's Boston-based DPT Program. He traveled to Boston periodically during his time working with TUSM in Boston, and he had a Boston office and telephone number for his use when in Boston.

    c. EIM representatives traveled to Massachusetts on April 3, 2019 specifically to meet and discuss with TUSM the potential partnership regarding the proposed non-Boston DPT Programs.

    d. EIM or its counsel drafted two versions of the Draft Expansion Agreement for TUSM's consideration, each of which EIM sent to TUSM in Boston. Each draft provided that the laws of the Commonwealth of Massachusetts would govern the agreement.

    e. EIM's improper threats of litigation directed at TUSM are causing harm to TUSM in the Commonwealth.

    f. TUSM incorporates by reference all other paragraphs in this Complaint as if set forth fully herein.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, or, in the alternative, pursuant to § 1391(b)(3).

## STATEMENT OF FACTS

**The Parties Begin Discussions Regarding DPT Programs Outside the Boston Area**

13. On January 11, 2019, TUSM Executive Associate Dean Thomas Malone ("Malone") and Childs had their first conversation about potentially developing DPT Programs in other geographic regions or states than Massachusetts (the "expansion concept").

14. Malone was interested in the expansion concept, and over the next few months had additional discussions with Childs and also presented the expansion concept to other decision-makers at TUSM.

15. As part of this process, Malone engaged Tufts' Executive Director of Strategy and Program Development, Karen Mulder ("Mulder") to analyze the expansion concept, and to help assess which geographic locations would make the most sense. Mulder performed a market analysis in March 2019, and, noting that EIM appeared to be looking at a broad swath of potential locations, recommended that TUSM focus on four: Arizona, Illinois, Washington and Maryland.

16. On April 3, 2019, Childs and April Briggs, who was then EIM's Vice President of University Partnerships, traveled to Boston for further discussions with Mulder about the expansion concept. During this meeting, Mulder advised EIM of the four locations that TUSM was considering as potential DPT Program expansion sites, including Arizona.

17. On May 16, 2019, EIM's outside counsel sent TUSM the first Draft Expansion Agreement. This initial version would have created a partnership to develop a DPT Program only in the greater Seattle, Washington metropolitan area. Consistent with TUSM's Boston-based location, EIM included in the draft that the laws of the Commonwealth of Massachusetts would govern the agreement.

18. Malone did not meaningfully respond to the draft. Although EIM inquired from time to time about status, the parties did not engage in material negotiations, nor did they materially advance, or finalize the Draft Expansion Agreement.

**TUSM Moves Forward with Plans to Develop Additional DPT Programs**

19. With the matter of whether TUSM would partner elsewhere with EIM in limbo, TUSM decided to move forward with its own expansion plans. Under the leadership of its Chair of Public Health and Community Medicine and Dean of Public Health and Professional Degree Programs Dr. Aviva Must ("Must"), TUSM began the process required to seek accreditation and to plan the development and logistical preparation for programs in the locations that TUSM had

selected. Childs, who was still a TUSM employee, provided some assistance in connection with certain of the tasks that TUSM undertook, even though there was no partnership agreement for any possible expansion.

21. In mid to late 2019, TUSM decided that it would focus on Phoenix, Arizona as the first expansion location.

22. As of early 2020, TUSM had not completely abandoned the idea of working with EIM on the Phoenix and other additional DPT Program sites, but there had been no real progress toward forming a partnership or negotiating the Draft Expansion Agreement. EIM, however, was eager to move forward with that proposed process.

23. In April of 2020, EIM had a call with Malone to discuss the Draft Expansion Agreement. In the call, EIM suggested a number of significant changes to the draft, and on April 20, 2020, EIM's Vice President of University Partnership sent Malone a second, revised draft. Unlike the first draft, this version was not limited to Seattle, but, rather, allowed for the development of DPT programs throughout the United States. Certain sections specifically referenced potential programs in Phoenix, Seattle, Chicago and Baltimore, consistent with the four states that TUSM had selected a year earlier as locales of interest.

24. The second version of the Draft Expansion Agreement did not simply expand the potential new locations, but also added a hybrid Doctor of Occupational Therapy program ("OTD Program") to the previously discussed DPT Programs. While EIM and TUSM had discussed the possibility of an OTD Program at a high level, TUSM had not fully vetted or agreed to the idea.

25. The second draft agreement contained a number of material financial and other terms that TUSM would not have accepted, if it had chosen to engage in any further negotiations. But, TUSM did not choose to do so, and therefore never responded to the draft.

26. Although TUSM had not yet closed the door on some form of partnering with EIM in Phoenix, TUSM began the process of moving forward on its own in the Spring of 2020, with steps that included opening its search for a full-time Program Director for the Phoenix DPT Program. TUSM retained a full time Program Director as of September 1, 2020.

27. When TUSM reached the formal decision in the Fall of 2020 that it would not partner with EIM in any manner in Phoenix, Must notified Childs of that decision by email.

28. TUSM's work on the Phoenix DPT Program has continued. TUSM has invested significant funds in the process and is making important progress toward accreditation. TUSM is also working on strategic contracts and other logistical arrangements in the Phoenix area, so that it has the personnel, infrastructure, and course content needed to launch the program when accreditation is received.

**EIM Threatens Legal Action in Connection With the Phoenix DPT Program**

29. Despite the fact that the parties never reached agreement to partner with respect to the Phoenix DPT Program, EIM has warned TUSM that the two-year hybrid model DPT Program is purportedly proprietary to EIM, as is the use of EIM-developed program materials that EIM incorrectly claims that TUSM will employ in Phoenix. EIM has even suggested that the concept of moving forward in Phoenix is EIM's concept. The context of the warnings – formal letters written in an unrelated matter – makes it clear that the warnings are a threat to initiate legal action if TUSM proceeds with the Phoenix DPT Program. EIM's implicit and explicit threats are without merit, and are a clear attempt to frustrate TUSM's efforts to continue with the program.

30. Because (a) the parties never reached an understanding on, or signed, the Draft Expansion Agreement, (b) TUSM is developing the Phoenix DPT Program on its own behalf without EIM's assistance, (c) the concept of a two-year hybrid DPT program is not proprietary to

EIM, and (d) TUSM is creating its own content and not relying on any purportedly proprietary materials of EIM, EIM's threats are improper and are intended to interfere with TUSM's lawful and appropriate Phoenix DPT Program.

31.  EIM, which partners with other schools, is a competitor to TUSM in markets other than Boston. *See, e.g.,* *https://www.eimpartnerships.com/*. EIM's attempt to coerce TUSM to forego the Phoenix DPT Program would, if successful, eliminate a DPT Program that might compete with those developed through EIM's other partnerships.

32.  EIM's threats are harming TUSM for no legitimate reason. TUSM is at a point where it is incumbent upon it to sign agreements with vendors and partners, and make other commitments and expenditures in order to move the Phoenix DPT Program forward. EIM's baseless threats of legal action are thwarting those efforts, and leaving TUSM and those with whom it seeks to do business unsure whether the program's continued development and potential launch will be clouded or delayed by a frivolous lawsuit filed by EIM. An actual controversy therefore exists between the parties.

33.  In order to eliminate the uncertainty caused by EIM's threats, TUSM brings this litigation and asks the Court with regard to its Phoenix Doctor of Physical Therapy Program to enter a declaratory judgment that (a) EIM has no IP rights in the concept of a two-year hybrid DPT Program, (b) TUSM cannot be held to have infringed upon IP rights in EIM materials because it has developed its own content; (c) TUSM's decision to establish the Phoenix DPT Program does not constitute a misappropriation of an EIM corporate opportunity; and (d) Tufts is entitled, directly or through TUSM, to proceed with the establishment of the Phoenix DPT Program without interference from EIM.

## COUNT I - DECLARATORY JUDGMENT

34. TUSM incorporates by reference Paragraphs 1 through 33 as if set forth fully herein.

35. EIM claims that TUSM cannot proceed with the Phoenix DPT Program without EIM's involvement, and/or that TUSM is improperly using EIM's IP in connection with the Phoenix DPT Program.

36. TUSM denies that the concept of a two-year hybrid DPT program is proprietary to EIM or anyone else and denies that it is using any materials that constitute EIM IP. TUSM also denies that the Phoenix locus can be considered an EIM corporate opportunity.

37. EIM has threatened litigation. TUSM has suffered harm and continues to suffer harm as a result of EIM's threats, which are interfering with the completion of tasks needed to develop and launch the Phoenix DPT Program.

38. An actual controversy exists between Plaintiff and Defendant, such that this matter is justiciable now pursuant to 28 U.S.C. § 2201.

39. Plaintiff is entitled to a declaration on the terms set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, TUSM respectfully requests that judgment be entered in its favor providing:

a. A declaratory judgment that (a) EIM has no IP rights in the concept of a two-year hybrid DPT Program, (b) TUSM cannot be held to have infringed upon IP rights in EIM materials because it has developed its own content; (c) TUSM's decision to establish the Phoenix DPT Program does not constitute a misappropriation of an EIM corporate opportunity; and

(d) Tufts is entitled, directly or through TUSM, to proceed with the establishment of a DPT Program based in Phoenix, Arizona without interference from Evidence in Motion, LLC; and

    b.       Such other and further relief as the Court may deem just and proper.

                  Respectfully submitted

                  TUFTS UNIVERSITY SCHOOL OF MEDICINE,

                  By its attorneys,

                  */s/* Joan A. Lukey
                  Joan A. Lukey (BBO#: 307340)
                  joan.lukey@choate.com
                  Justin J. Wolosz (BBO#: 643543)
                  jwolosz@choate.com
                  CHOATE, HALL & STEWART LLP
                  Two International Place
                  Boston, MA 02110
                  Tel.: (617) 248-5000
                  Fax: (617) 248-4000

Date: August 20, 2021